IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| POONAM SRIVASTAVA, M.D. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE GUARDIAN LIFE INSURANCE | : | No. 14-2568 |
| COMPANY OF AMERICA | : | |

MEMORANDUM

NORMA L. SHAPIRO, J.                                                                                      AUGUST 3, 2015

      Poonam Srivastava, M.D. ("Dr. Srivastava"), an oncologist and hematologist allegedly suffering from hemianopia and partial field of vision loss, brought this action against Guardian Life Insurance Company of America ("Guardian") for disability benefits under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA").[1]  Guardian funds and makes eligibility determinations for a long-term disability plan (the "Plan") established by Dr. Srivastava's employer, Poonam Srivastava, M.D., PC.[2]  Guardian denied Dr. Srivastava's claim for disability benefits and affirmed its decision on an internal appeal.

      The parties have filed cross-motions for summary judgment on the administrative record. The decision to deny Dr. Srivastava's claim was not arbitrary and capricious.  Guardian's summary judgment motion will be granted.

---

[1] On April 4, 2014, Dr. Srivastava filed an action against Guardian in the Court of Common Pleas of Lancaster County, Pennsylvania.  Guardian removed to federal court based on federal question jurisdiction under 29 U.S.C. § 1132(e).

[2] Poonam Srivastava, M.D., PC is a professional corporation consisting of Dr. Srivastava and other oncologists.  Compl. ¶ 5.

I.  **BACKGROUND**

**Overview**

Employed at a Cancer Care Center, Dr. Srivastava states she has served as an oncologist and hematologist for approximately twenty three years.  Record at 212.  Her job duties include examining patients; reading patient records such as MRIs, x-rays, and laboratory reports; and reviewing electronic records on a computer screen.  *Id*.  In February 2012, Dr. Srivastava first experienced partial field of vision loss in her right eye, a condition then diagnosed as "[h]emianopia due to possible sudden occlusion of a branch of the retinal artery."  Compl. ¶ 14; Record at 212.  The accompanying symptoms, among others, were headaches, blurred vision, and pain, watering, and dryness in her right eye.  Compl. ¶ 17; Record at 212.  The symptoms allegedly prevented her from reading for more than fifteen minutes at a time, servicing her patients and, as of June 6, 2012, rendered her unable to perform her material duties as an oncologist.  Compl. ¶¶ 18-19; Record at 212.

On November 23, 2012, Dr. Srivastava filed a claim for disability benefits under the Plan.  Compl. ¶ 21.  After a peer review of Dr. Srivastava's medical records by ophthalmologist Dr. Lawrence Reese ("Dr. Reese"), Guardian denied Dr. Srivastava's claim on February 1, 2013.  Compl. ¶¶ 23-24; Record at 413-416.  Dr. Srivastava appealed Guardian's decision on February 13, 2013.  Compl. ¶ 26.

On the recommendation of ophthalmologist Dr. Louis Betz ("Dr. Betz"),[3] Guardian asked neuro-ophthalmologist Dr. Grant T. Liu ("Dr. Liu") to examine Dr. Srivastava.  Compl. ¶ 32;

---

[3] In her letter on appeal, Dr. Srivastava referred to Dr. Betz as her "main physician regarding [her] vision impairment."  Record at 213.

Record at 114.  Following Dr. Liu's examination and report, Guardian affirmed its denial of Dr. Srivastava's claim on September 10, 2013.  Compl. ¶ 38; Record at 112-116.

**Standard of Review**

Where an administrator has discretionary authority to make eligibility determinations, the decision to deny benefits is reviewed under an "abuse-of-discretion (or arbitrary and capricious) standard."  *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011).  The Plan gives Guardian "discretionary authority to determine eligibility for benefits and to construe the terms of the plan with respect to claims."  Record at 95.

An administrator's decision may be overturned only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law."  *Id.*  "[C]ourts generally must base their review of an administrator's decision on the materials that were before the administrator when it made the challenged decision."  *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 (3d Cir. 2010).

**The Administrative Record**

Relevant aspects of the administrative record include: (1) the terms of the Guardian Plan; (2) Dr. Srivastava's medical treatment and accompanying diagnoses; (3) Dr. Reese's peer review of Dr. Srivastava's medical records; (4) Guardian's initial decision and Dr. Srivastava's letter on appeal; (5) Dr. Betz's review of Dr. Reese's report; (6) Dr. Liu's independent medical examination and report; and (7) Guardian's final decision.

<u>The Guardian plan</u>

Dr. Srivastava has been a participant in the Plan since May 1, 2006.  Compl. ¶¶ 5, 7.  To receive benefits under the Plan, a covered person must be "disabled" for at least 180 days, the

Plan's "elimination period." Record at 65, 646. To be "disabled," a covered person must "not be able to perform, on a full-time basis, the major duties of his or her own job." Record at 65.

Guardian concluded Dr. Srivastava was not "disabled" because she could perform the major duties of her job as an oncologist. She was not awarded any benefits under the Plan. Record at 112, 413.

Medical treatment and diagnoses

After experiencing partial field of vision loss in February 2012, Dr. Srivastava saw family physician William LeMasters, D.O., who referred her to ophthalmologist Dr. David A. Lightman ("Dr. Lightman"). Dr. Lightman concluded she had "visual field loss of the vertical midline" in one eye, "suggestive of a neurologic problem." Record at 293. Later in February, Dr. Srivastava saw associate professor of ophthalmology and neurology Dr. William A. Cantore, who diagnosed her as having "Horner's syndrome on the right [eye], an inferior acute defect originating from [a] blind spot." Record at 131. In May, Dr. Srivastava saw another ophthalmologist, Dr. Subramanian, who found she had "branch retinal vein occlusion" and "non-arteritic anterior ischemic optic neuropathy" of the right eye. Record at 365. The doctors Dr. Srivastava saw between February and May 2012 did not state she was unable to perform the major duties of her job as an oncologist.

Dr. Srivastava alleges she became unable to perform the major duties of her job on June 6, 2012. Compl. ¶ 18. Between June and November 2012, Dr. Srivastava saw numerous neurologists and ophthalmologists, including Drs. Lightman, Blakeslee, Reinheimer, Betz, Fuller, and Sergott. They diagnosed her as having, among other conditions, "retinal vein thrombosis" and "vision loss in the right eye" (Lightman, Record at 294); "ischemic issue[s] in her right eye" (Blakeslee, Record

at 539); "ptosis" or a drooping right eyelid (Reinheimer, Record at 543); glaucoma and right eye ocular hypertension (Betz, Record at 310); and "branch retinal vein occlusion" (Fuller, Record at 316). Those reports did not state that Dr. Srivastava could not perform the major duties of her job as an oncologist.

On November 9, 2012, ophthalmologist Dr. Lightman sent Guardian a letter "strongly encourag[ing]" it "to consider [Dr. Srivastava's] claim for disability based on her visual impairment" after Dr. Srivastava assured him "she [was] not capable of working a full day with extensive reading and computer work." Record at 285. On November 19, Dr. Srivastava sent Guardian an Attending Physician's Statement completed by her new primary care physician, Dr. Sally Ferguson-Avery, recommending that Dr. Srivastava "cease work" because of her inability to "sustain reading tasks[,] including charting patient notes." Record at 286-87. She also stated Dr. Srivastava "may not be able to do her physician-related work." *Id.* A different statement completed by Dr. Lightman on November 23 did not advise Dr. Srivastava to "reduce work hours", "cease work", or "work light duty." Record at 289.

Dr. Reese's independent peer review

To facilitate its eligibility determination, Guardian arranged for an independent review of Dr. Srivastava's medical records by an ophthalmologist specializing in retinal and macular disease, Dr. Reese. Record at 484. Dr. Reese diagnosed Dr. Srivastava as having "a visual field defect in the right eye of an indeterminate etiology." Record at 332. He concluded that "[b]ased upon the medical records and the occupational data provided . . . based purely upon objective data, [Dr. Srivastava] should be able to perform the duties of her occupation." Record at 335.

Dr. Reese added: "[O]bjectively one would think that this claimant should be able to perform her occupational duties. The difficulty lies in this individual's perception of her visual acuity and the fact that her right eye may be her dominant eye. . . . This might cause her some difficulty with tracking words across a printed page. However, it is this reviewer's opinion that this individual should be able to overcome this with the passage of time. She may not perform to the rapid level she performed previously, but should be able to perform those occupational duties given the accommodation of extra time and rest. . . . I do not think there are specific limitations on her occupational duties based upon the objective data." Record at 336.

As part of his review, Dr. Reese had a peer-to-peer discussion with ophthalmologist Dr. Lightman about Dr. Srivastava's functional limitations. Record at 330. Dr. Reese observed that while "there was a significant visual field defect on [Dr. Srivastava's] right eye . . . [Dr. Srivastava] should be able to read, view a computer screen, and do most of the occupational requirements of an Internist. This was discussed in detail with Dr. Lightman who said he did not disagree but he did not want to be dogmatic about it. . . . While objectively neither one of us could state that [Dr. Srivastava] has significant functional limitations, her perception of her vision is worse than that we have recorded in the medical record." Record at 331.

Dr. Reese's report was forwarded to Dr. Lightman, who, in a letter to Guardian dated January 30, 2013, characterized Dr. Reese's independent review as "outstanding and very thorough." Record at 342. "I agree completely with [Dr. Reese's] comments and have nothing further to add." *Id*.

<u>Guardian's initial decision and Dr. Srivastava's letter on appeal</u>

On February 1, 2013, Guardian denied Dr. Srivastava's claim for disability benefits because

"the medical information submitted [did] not support [Dr. Srivastava's] inability to work in [her] own occupation." Record at 413. Guardian based its decision on Dr. Srivastava's medical records, Dr. Reese's peer review, and Dr. Lightman's response to Dr. Reese's peer review. Record at 413-14. Guardian's letter instructed Dr. Srivastava on how to appeal the decision. Record at 413.

Dr. Srivastava appealed Guardian's decision. Record at 213. By letter dated February 27, 2013, Dr. Srivastava detailed her symptoms, including the "pain in [her] right eye, blurred vision and headaches" that led her to experience "extreme fatigue" and even fall asleep while examining a certain patient. Record at 212. She asserted that Dr. Betz, whom she referred to as her "main physician regarding [her] vision impairment," had conceded "there [was] no solution available to improve [her] condition." Record at 212-13. She also asserted that because she could only feasibly perform her duties for fifteen minutes at a time, Dr. Reese's proposed solution of more rest breaks would do her patients a disservice by forcing her to take six breaks in any given ninety-minute session. *Id.*

Dr. Srivastava recommended that her case be discussed with Dr. Betz. Record at 213. She disagreed with Dr. Lightman's assessment because "[Dr. Lightman] is a retina specialist and there is no damage to my retina." *Id.*

Dr. Betz's assessment of the Reese report

On appeal, Guardian arranged to have Dr. Betz review Dr. Reese's report. In a letter to Guardian dated February 22, 2013, Dr. Betz stated he "[did] not agree with Dr. Reese's evaluation, primarily because the patient is disabled due to a superior altitudinal field defect plus temporal field defect in her dominant right eye." Record at 343. He added that "[a]t present . . . Dr. Srivastava is close to 100% disabled in that she cannot carry out an oncology practice with any

kind of reasonable efficiency.  She is a thorough clinician and is totally uncomfortable with only being able to reach an unsatisfactory level of certainty about what she is reading and seeing due to the field defects." Record at 344.  Dr. Betz recommended that a neuro-ophthalmologist evaluate Dr. Srivastava before Guardian reached an adverse decision on her disability claim.  *Id.*

    Independent review by Dr. Liu

At Dr. Betz's suggestion, Guardian arranged for Dr. Srivastava to be evaluated by a professor of neurology and ophthalmology at the University of Pennsylvania School of Medicine, Dr. Liu.  Record at 155.  After examining Dr. Srivastava and reviewing her medical records, Dr. Liu concluded: "There is no clear reason why her degree of visual impairment should by itself cause functional impairment as long as both eyes are open.  [Dr. Srivastava] does not appear to require stereoscopic vision in her occupation as a medical oncologist.  Her complaints of tearing, fatigue, and headache are not easily explained by her visual deficits alone." Record at 154-55.  He added that "[b]ased on her visual findings alone, there should be no work restrictions in her own occupation." Record at 155.  In a Vision Impairment Questionnaire he sent Guardian, Dr. Liu noted that eyeglasses would permit Dr. Srivastava to perform her job successfully.  Record at 156.

Dr. Betz was given an opportunity to review Dr. Liu's report.  In a letter to Guardian dated June 6, 2013, he stated that "Dr. Liu did an excellent job of summing up the various problems" Dr. Srivastava had experienced "start[ing] the end of winter 2012 when a hemorrhage and partial optic neuritis occurred in [her] right eye." Record at 125.  But he added that "[n]obody but Dr. Srivastava is going to be capable of determining if she is able to work.  My bet is that Dr. Srivastava will be able to work back into a clinical practice, but may never be able to do full time or indeed not be able to do full time for six to twelve months. . . . At present, Dr. Srivastava, in my

opinion, is still disabled until she can satisfy her very stiff clinical demands." Record at 126.

Dr. Liu reviewed Dr. Betz's letter and stated: "The comments by Dr. Betz do not change the opinions expressed in my 4/23/13 note. The vision loss, hyperphoria, and dry eye that Dr. Betz describes do not account for an inability to work." Record at 120.

<u>Guardian's decision on appeal</u>

By letter dated September 10, 2013, Guardian affirmed its decision to deny Dr. Srivastava disability benefits. Record at 112. It concluded that "the totality of the medical documentation does not support functional limitations which render [Dr. Srivastava] disabled as defined by the plan." Record at 115. The letter detailed the steps Guardian took after Dr. Srivastava appealed its initial decision, including consulting Dr. Betz on Dr. Reese's report; obtaining medical records from Drs. Subramanian and Cantore; arranging for an independent medical review by Dr. Liu after Dr. Betz recommended an evaluation by a neuro-ophthalmologist; and consulting Dr. Betz on Dr. Liu's findings. Record at 114-15. Guardian found the opinions of the "independent reviewing physicians," Drs. Reese and Liu, to be "well-reasoned and supported by the medical evidence." Record at 115-16.

## II. DISCUSSION

In her motion for summary judgment, Dr. Srivastava makes four unpersuasive arguments belied by the record: (1) Guardian's reliance on the independent medical opinions of Drs. Reese and Liu, to the exclusion of Dr. Betz's, was arbitrary and capricious; (2) Guardian violated ERISA by relying on Dr. Reese's peer review for its initial decision and on appeal; (3) Guardian accepted the diagnoses of Drs. Reese and Betz, but ignored the caveats accompanying those diagnoses; and (4) Guardian ignored Dr. Srivastava's self-reported symptoms.

First, ERISA does not require plan administrators to accord special deference to the opinion of a treating specialist such as Dr. Betz.  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).  To survive the arbitrary-and-capricious test, an administrator's decision must be supported by substantial evidence, but the evidence need not be arrayed uniformly on a single side.  *Id.*  Guardian concluded that Dr. Betz's medical opinion was outweighed by the independent assessments of ophthalmologist Dr. Reese and neuro-ophthalmologist Dr. Liu, both of whom concluded Dr. Srivastava was capable of performing her occupational duties.  Record at 155, 335.  Dr. Betz failed to draw the distinction between what Dr. Srivastava is capable of doing and what she is comfortable doing.  Record at 344.

Second, the record does not support the assertion that Guardian relied on Dr. Reese's report for its initial decision and on internal appeal.  On appeal, at Dr. Betz's suggestion, Guardian scheduled an independent medical review by Dr. Liu.  Record at 114.  Dr. Liu's report, described by Dr. Betz as an "excellent" summary of Dr. Srivastava's "various problems," was used to justify Guardian's final decision.  Record at 114, 115, 125.  Guardian did not rely twice on the same evidence.

Third, Dr. Reese's review supported Guardian's initial eligibility determination and on appeal Guardian followed Dr. Betz's advice by scheduling an independent medical examination with a neuro-ophthalmologist, Dr. Liu.  Dr. Reese had concluded that although Dr. Srivastava "may not perform to the rapid level she performed previously, [she] should be able to perform [her] occupational duties given the accommodation of extra time and rest."  Record at 336.  Dr. Srivastava has not been denied the prescribed accommodation and Dr. Reese's prognosis is consistent with Guardian's conclusion that Dr. Srivastava could perform her major duties as an

oncologist.  With respect to Dr. Betz, although he concluded Dr. Srivastava "is close to 100% disabled [and] cannot carry out an oncology practice with any kind of reasonable efficiency," he deferred to the opinion of a neuro-ophthalmologist.  Record at 344.  Based on that recommendation, Guardian consulted Dr. Liu on appeal, who concluded otherwise.  Record at 154-55.

Fourth, both Drs. Reese and Liu considered Dr. Srivastava's self-reported symptoms, but concluded they were not easily explained by her objective limitations.  Record at 154, 336.  They noted both her subjective and objective constraints before reaching their independent conclusions.  *Id.*

Guardian's determinations were reasonable and supported by substantial medical evidence.  The independent medical opinions of ophthalmologist Dr. Reese and neuro-ophthalmologist Dr. Liu supported Guardian's denial of Dr. Srivastava's claim.  Record at 114-15.  Their approaches were endorsed by Drs. Lightman and Betz: Dr. Lightman characterized Dr. Reese's report as "outstanding and very thorough" and Dr. Betz described Dr. Liu's report as an "excellent" summary of Dr. Srivastava's various problems.  Record at 125, 342.  The neurologists and ophthalmologists Dr. Srivastava saw between February and November 2012—including Drs. Lightman, Blakeslee, Reinheimer, Fuller, and Sergott—did not state Dr. Srivastava could not perform her major duties as an oncologist.

Guardian's decision to deny Dr. Srivastava disability benefits was not arbitrary and capricious.  Guardian's motion for summary judgment will be granted.  An appropriate Order follows.